**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

STEVEN GOAL                                                                                                    PLAINTIFF

v.                                              No. 5:09CV00137 JLH

RETZER RESOURCES, INC.;
MIKE RETZER; and MCDONALD'S
RESTAURANT OF HELENA #5425                                                                      DEFENDANTS

**OPINION AND ORDER**

Steven Goal brings this action against Retzer Resources, Inc., Retzer Group, Inc., Mike Retzer, and McDonald's Restaurant of Helena #5425, alleging disability discrimination and retaliation in violation of the Americans with Disabilities Act (ADA) and Arkansas Civil Rights Act (ACRA); race discrimination in violation of Title VII, the ACRA, and 42 U.S.C. § 1981; and violations of the Family and Medical Leave Act (FMLA) and Fair Labor Standards Act (FLSA). The defendants initially filed a motion to dismiss or in the alternative for partial summary judgment, which the Court granted as to Goal's Title VII claims for race discrimination and retaliation, his FMLA and sex discrimination claims, and his claims against Retzer Group Inc. The Court denied the defendants' motion in all other respects. Now that discovery has closed, the remaining defendants have again moved for summary judgment. Defendants also seek to dismiss defendant McDonald's Restaurant of Helena #5425 because no such entity exists. For the following reasons, defendants' motion is granted in part and denied in part.

**I. LEGAL STANDARDS**

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party carries its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.' " *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

## II.  STATEMENT OF FACTS

Steven Goal is an African-American. He has bipolar disorder and schizophrenia for which he receives medication and counseling from a behavior center in Pine Bluff, Arkansas. When deposed, Goal testified that if he takes all of his medication simultaneously he is put "in a coma state" in which he "can't do anything[.]" Further, he testified that his complete medication regime makes him sleepy and causes him to "slobber on" himself so that he cannot "function." He stated that when on Depakote, his ability to drive is hindered, he cannot hold his infant, he feels depressed, and is unable to function well at work. Goal also said that Haldol "slows [him] down a whole lot" at work prompting other employees to ask if he is okay.

On October 25, 2007, Goal was hired by Tracy Chatman, also an African-American and the Store Manager of a McDonald's located on Harding Avenue in Pine Bluff. This restaurant is owned by Retzer Resources, Inc., of Greenville, Mississippi, for whom Michael Retzer, Jr., works as Area Supervisor. At his deposition, Goal testified that he told Chatman, when he was hired, that he took medication, had to be off on certain days for doctor visits, and sometimes would become stressed out and overwhelmed. He stated that he did not describe his mental problems to Chatman with particularity because he "felt that it wasn't none [sic] of her business." He testified that he told Mike Retzer that he took medications. Goal concedes that Chatman regularly allowed him to take breaks to cool off when he became stressed and even permitted him to go home when he felt particularly bad. Goal asserts that during his time at the restaurant Chatman regularly called him "crazy" and "super Steve"—terms which he took to refer to his mental illness, and which, based on the tone of voice used and body language, he understood to be derogatory. He says that the other store employees also called him "crazy," "super Steve," "fool," and "flunky." Goal testified that Mike Retzer called him "boy" on four occasions. Mike Retzer apologized and ceased to use that term after he was asked three times to desist. Goal also stated at deposition that he worked overtime hours for which he was not paid but admitted that he has no document evidence to support this claim and cannot recall the actual dates on which he worked but was not paid.

Goal worked at the restaurant slightly more than eleven months. He was terminated on October 2, 2008. The parties disagree about exactly what happened on that date. It is undisputed that Goal grew angry or had a nervous breakdown; that he made a 911 call from the back of the restaurant; that he stated that he was carrying a box cutter in response to a dispatcher question about whether he had a weapon; and that he told the dispatcher he felt like hurting himself or others,

3

needed somebody to come and get him and take him to the hospital, was not on his medication, and would give the box cutter to whomever came to pick him up. Neither Mike Retzer nor Chatman was present at the store during the occurrence. Store employees later informed Chatman and Mike Retzer that Goal had refused to clean up a female hygiene product in the bathroom, screamed profanities and threats at employees and in reference to Chatman and Mike Retzer in a voice load enough to be heard by patrons, and jumped and broke a light fixture. Goal denies that he engaged in this conduct. He says that he burned himself changing the grease and "that's when everything started to get out of control or whatever," but "[i]t wasn't so much of you going crazy or you going berserk or something like that." Goal offers an affidavit from his wife, who worked at the same restaurant. She states that when she went to the restaurant about thirty to forty minutes after the incident, she found that the business had returned to normal though the police were still present. She stated that the manager on duty, Rondell Curtis, described the incident, did not mention any violence, destruction of property, or upset customers but did state that Goal had refused to clean some filters when instructed to do so by the manager, had demanded to talk with Chatman, and had stated that "[i]f he didn't get a chance to talk to her, he felt like he would do something." Goal's wife also says in her affidavit that Chatman "called me in the office and told me he was fired. She said that she would not have the police at McDonald's like that. She did not mention any threats, violence, destruction of property, or upset customers."

On October 24, 2008, Goal filed an EEOC charge of discrimination alleging that he was terminated on October 2, 2008, because of his disability and in violation of the ADA. In his charge,

Goal only checked the box indicating disability discrimination but not the one indicating retaliation. On February 12, 2009, the EEOC issued Goal a right to sue letter in reference to his disability discrimination charge.

### III. DISABILITY DISCRIMINATION UNDER THE ADA AND ACRA

Goal brings a claim for discrimination under the ADA, alleging that defendants wrongfully discharged him on account of his bipolar disorder and schizophrenia, violated the duty of an employer to provide reasonable accommodation, and allowed him to be subjected to a hostile working environment. Though the prima facie elements of each claim are distinct in part, they share a common requirement: Goal must be within the ADA's protected class. *See Rohan v. Networks Presentations LLC*, 375 F.3d 266, 272 (4th Cir. 2004). To fall within the ADA's protection, Goal must be both disabled and a qualified individual. 42 U.S.C. § 12112(a).

**A. DISABILITY**

The defendants contend that Goal can not claim the protection of the ADA because he is not disabled within the meaning of the act. Goal argues that he is disabled under the ADA and was regarded as disabled. The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual" or "being regarded as having such an impairment." 42 U.S.C. § 12102(1).

Bipolar disorder and schizophrenia are impairments under the ADA. *See Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1284 (7th Cir. 1996) ("[Plaintiff's] past and continuing battle with bipolar disorder and paranoid schizophrenia is not disputed, and the ADA specifically includes mental illness as a disability.") (citing 42 U.S.C. § 12102). Further, Goal asserts that his bipolar disorder and schizophrenia, whether or not treated by medications, affect major life activities,

5

namely, thinking and concentrating. Goal states that he cannot work, drive, or hold his baby when he is fully medicated. Under the regulations, working is a major life activity. 29 C.F.R. § 1630.2(i) ("Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."). Courts have held that thinking and concentrating are major life activities. *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 720 (8th Cir. 2003) (thinking); *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir. 1999) (concentrating); *Walsted v. Woodbury Cnty., IA*, 113 F. Supp. 2d 1318, 1330 (N.D. Iowa 2000) (concentrating). The Eighth Circuit has assumed without deciding that driving may be a major life activity. *See Anderson v. N.D. State Hosp.*, 232 F.3d 634, 636 (8th Cir. 2000).

The crucial question is whether Goal's bipolar disorder and schizophrenia substantially limit any of the major life activities that he has identified. The term "substantially limits" means "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). In determining whether an impairment substantially limits a major life activity, courts are to consider the "nature and severity of the impairment... [t]he duration or expected duration of the impairment" and the "permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Id.* at § 1630.2(j)(2). Finally, this determination must be made with reference to any aggravating factors or mitigating measures such as medications. *Sutton v. United Air Lines*, 527 U.S. 471, 482, 119 S. Ct. 2139, 2146, 144 L. Ed. 2d 450 (1999).

There is evidence from which a reasonable jury could conclude that, when Goal is on all the medications prescribed for him, he is unable, or greatly impaired in his efforts, to work, drive, or concentrate. Goal has testified that regardless of medication he has difficulty thinking and concentrating. A reasonable jury could find that Goal's bipolar disorder and schizophrenia are severe impairments. Nothing indicates that Goal's impairments or their effects, whether he is medicated or not, are only temporary or short term. This evidence creates a material question of fact as to whether Goal's impairment substantially limits a major life activity. Summary judgment cannot be granted on the issue of whether Goal was disabled.

**B.    QUALIFIED**

A qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The defendants argue that Goal is not qualified because he testified that when he is fully medicated he cannot work. As noted, Goal worked at the McDonald's restaurant for eleven months. It is undisputed that he had not taken his medications during the last six months of his employment, which suggests that he had worked for five months while taking medication. Thus, the evidence suggests that Goal was able to work while on medications for a number of months, so long as he was permitted to take breaks and leave early if his symptoms acted up. *E.E.O.C. v. Convergys Customer Mgmt. Grp., Inc.*, 491 F.3d 790, 794 (8th Cir. 2007) (employee must be qualified to perform essential functions of job, with or without reasonable accommodation). The evidence is in conflict about whether Goal was qualified and, thus, there is a question of fact for a jury.

C. **HOSTILE WORK ENVIRONMENT**

The Eighth Circuit has held that a claim for a hostile work environment may be brought under the ADA. *Shaver v. Independent Stave Co.*, 350 F.3d 716, 719 (8th Cir. 2003). In determining whether a hostile work environment claim has been made under the ADA, the court looks to standards developed elsewhere in anti-discrimination law and adapts those standards to the unique requirements of the ADA. *Id.* at 720. To prevail on a claim of a hostile work environment under the ADA, the plaintiff must show "(1) [he] is a qualified individual with a disability; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability or a request for an accommodation; and (4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive working environment." *Hiller v. Runyon*, 95 F. Supp. 2d 1016, 1023 (S.D. Iowa 2000). *Cf. Shaver*, 350 F.3d at 720.

As discussed above, there is a fact question as to whether Goal is disabled and a qualified individual. As to whether he was harassed because of his disability, Goal testified that he was called "crazy," "fool," "super Steve," and "flunky" by store employees and supervisors. His wife says in her affidavit that Chatman called him "super Steve" on a regular basis and "a lot of people in the store called him that." While the term "super Steve" on its face does not refer to Goal's disability, Goal testified that the context of these comments and the response to them by other employees indicated that the comments referred to his disability.

Goal also must show that he was subject to harassment sufficiently severe or pervasive to negatively affect the conditions of his employment and create an abusive working environment. This last element has both an objective and subjective aspect. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993); *Shaver*, 350 F.3d at 721. Although the names

that he was called were not as heinous as some in the reported hostile work environment cases, Goal states that they were frequent. *Cf. Harris*, 510 U.S. at 23, 114 S. Ct. at 371 (factfinder should look to "frequency of the discriminatory conduct," among other things, to determine if the work environment is hostile). Goal testified in his deposition that the comments made his mental illness difficult to cope with and eventually resulted in his mental breakdown on the day when he was terminated. While a jury might attribute that breakdown to his failure to take his medication, there is at least some evidence that Goal suffered psychological trauma as a result of the alleged harassment. "Showing some tangible psychological condition is not necessary to make out a hostile work environment claim, but it may be taken into account." *Shaver*, 350 F.3d at 722. If jurors believed Goal's assertions about the frequency of the comments, their intended significance, the wide scope of those who participated in making the comments, and the effect they had on his mental illness, they could conclude that Goal found, and a reasonable person with Goal's disability would have found, such comments to be "pervasive enough to become a defining condition of the workplace" creating a hostile work environment. 1 Barbara T. Lindemann & Paul Grossman, *Employment Discrimination Law* 1337 (C. Geoffrey Weirich et al. eds., 4th ed. 2007).

**D.    WRONGFUL DISCHARGE**

In cases alleging that an employee was discharged for discriminatory reasons in violation of federal law, a motion for summary judgment may be analyzed in two ways. First, the court must consider whether the plaintiff can present direct evidence of discrimination, that is, evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Libel v. Adventure Lands of Am.*, 482 F.3d 1028, 1034

(8th Cir. 2007) (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)). In the absence of direct evidence, a claim of wrongful discharge under the ADA is analyzed using the familiar *McDonnell Douglas*[1] burden-shifting approach.

In the instant case, Goal argues that there is direct evidence that he was terminated because of his disability. In supporting this assertion, Goal cites his deposition testimony that Chatman and Mike Retzer regularly, and in a derogatory way, called him by such terms as "crazy" or "super Steve" which Goal took to refer to his mental impairment, and that his managers "tolerated this sort of conduct from the other employees as well, on a constant basis." This evidence arguably can be considered direct evidence and obviously is intertwined with the evidence of a hostile working environment.

"[A] district court in passing on a Rule 56 motion [for summary judgment] performs what amounts to what may be called a negative discretionary function. The court has no discretion to [g]rant a motion for summary judgment, but even if the court is convinced that the moving party is entitled to such a judgment the exercise of sound judicial discretion may dictate that the motion should be [d]enied, and the case fully developed." *McLain v. Meier*, 612 F.2d 349, 356 (8th Cir. 1979); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2728, at 525-26 (3d ed. 1998) ("[I]n most situations in which the moving party seems to have discharged his burden of demonstrating that no genuine issue of fact exists, the court has discretion to deny a Rule 56 motion. This is appropriate since even though the summary-judgment standard appears to have been met, the court should have the freedom to allow the case to continue

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

when it has any doubt as to the wisdom of terminating the action prior to a full trial."). The jury may well decide that Goal was discharged because of his behavior on the morning of October 2, 2008, and not because of a discriminatory animus, but that is a decision in this instance that properly should be left to the jury. Goal's ADA claim of wrongful discharge will be denied, and Goal will be allowed to proceed to trial on both the hostile work environment and the wrongful discharge claims under the ADA.

**E.     FAILURE TO ACCOMMODATE**

Under the ADA, an employer can be held liable for discrimination if it fails to provide reasonable accommodation that would enable an employee to perform the essential functions of his job. "A disabled employee must initiate the accommodation-seeking process by making his employer aware of the need for an accommodation." *Convergys Customer Mgmt. Grp., Inc.*, 491 F.3d at 795. The employee "must provide relevant details of his disability and, if not obvious, the reason that his disability requires an accommodation." *Id.* Thereupon, "the employer must 'make a reasonable effort to determine the appropriate accommodation.' " *Id.* (citing *Cannice v. Norwest Bank Iowa N.A.*, 189 F.3d 723, 727 (8th Cir. 1999)).

In the instant case, Goal refused to disclose detailed information about his condition to his employer. He states in his deposition that when he was hired he informed Chatman that he had mental problems and explained to her that he would need certain days off for medical visits and that he sometimes became agitated at work. However, Goal testified that he did not explain his condition in detail because it was "none of her business." Goal also told Mike Retzer that he took medications. Goal testified that Chatman permitted him to take breaks when he became agitated and even allowed him to go home if his stress was severe. There is no evidence that Goal was prevented from taking

time off to attend medical appointments. Goal has offered no evidence that would permit a reasonable jury to conclude that defendants failed to provide Goal with reasonable accommodation as required under the ADA.

### F.     DISABILITY DISCRIMINATION UNDER THE ACRA

Courts "analyze a disability claim presented under the ACRA using the same principles employed in analyzing claims under the [ADA]." *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 490 (8th Cir. 2002); *see* Ark. Code Ann. § 16-123-105(c). Goal cannot assert a failure to accommodate claim under the ACRA. However, Goal may still maintain an ACRA claim for wrongful discharge and a hostile work environment due to his disability.

### IV.  RETALIATION UNDER THE ADA AND THE ACRA

The defendants argue that Goal's claims for retaliation under the ADA and ACRA are barred because Goal failed to exhaust administrative remedies and also that those claims fail on the merits. Goal counters that the exhaustion argument is not effective as to the ACRA retaliation claim. Further, he argues that the facts pled in the EEOC charge were sufficient to invite the EEOC to uncover the issue of retaliation.

To assert an ADA claim for retaliation, a plaintiff must first exhaust his administrative remedies. *Randolph v. Rodgers*, 253 F.3d 342, 347 n.8 (8th Cir. 2001) ("Title VII of the Civil Rights Act of 1964 and Title I of the ADA both require exhaustion of administrative remedies[.]"). This requires timely filing an EEOC charge and then receiving a right to sue letter. *See Dominguez v. Council Bluffs*, 974 F. Supp. 732, 735 (S.D. Iowa 1997) ("This court agrees that an employee making a claim under Title I of the ADA (which tracks the procedures of Title VII actions) is required to timely file an EEOC charge."). In Goal's EEOC charge, he checked only the box indicating

discrimination based on disability, not retaliation. Further, the charge does not state any facts indicating that Goal believed that he was terminated for seeking accommodation in the form of medical leave or that he even sought medical leave—the basis of the retaliation claim asserted in the complaint. Hence, the ADA and ACRA retaliation claims must be dismissed. *See Hackett v. Vinco, Inc.*, No. 4:10-CV-00003, 2010 WL 716422 (E.D. Ark. February 24, 2010) (dismissing retaliation claim for failing to exhaust administrative remedies where plaintiff checked only the box marked "Race," failed to check the box marked "Retaliation," and alleged no facts that would give notice to a retaliation claim).

Apart from Goal's failure to exhaust his administrative remedies under the ADA, his retaliation claim fails on the merits. In the absence of direct evidence of retaliation, a plaintiff must show (1) that he engaged in statutorily protected activity, (2) an adverse employment action was taken against him, and (3) the adverse employment action was the result of his statutorily protected activity. *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007); *Thompson v. Bi-State Dev. Agency*, 463 F.3d 821, 826 (8th Cir. 2006). The only statutorily protected activity by Goal before his termination was his request for time off to go to the doctor and his request for breaks when he was stressed. He told Chatman of his need for those accommodations when he was first employed in October 2007. There is no evidence that Goal's requests were ever denied nor that the requests were held against him by his superiors. There is no evidence that his request was any part of the motive for his discharge almost a year later. There is no evidence that Goal had been to the doctor during the six months preceding his termination. When asked about his retaliation claim in his deposition, Goal testified that he would have requested medical leave if he had not been fired immediately, when the incident occurred on October 2, 2008, but that testimony obviously does not

support a retaliation claim. Consequently, Goal's retaliation claim fails on the merits under both the ADA and the ACRA. *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1036 (8th Cir. 2005); *Wallace v. Sparks Health Sys.*, 415 F.3d 853, 861 (8th Cir. 2005).

## V. RACE DISCRIMINATION UNDER SECTION 1981 AND THE ACRA

The defendants contend that Goal is collaterally estopped from asserting race discrimination claims under section 1981 and the ACRA because the Arkansas Department of Workforce Services denied his claim for unemployment benefits based on the conclusion that Goal was terminated for "the use of profane language and inappropriate behavior while at work."[2] The defendants also assert that Goal is unable to establish the elements of a *prima facie* case for race discrimination under section 1981 or the ACRA. Goal contends that the evidence that Mike Retzer called him "boy" on four separate occasions, in addition to his testimony that Mike Retzer and Chatman generally treated him in a demeaning manner and encouraged the other employees to do so, create a question of fact as to whether he was wrongfully discharge and subjected to a hostile work environment based on his race.

The Supreme Court has held "that when a state agency acting in a judicial capacity. . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate. . . federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 797-99, 106 S. Ct. 3220, 3225-26, 92 L. Ed. 2d 635 (1986) (quotations and citations omitted). Here, the decisions of the Arkansas Department of Workforce Services and the Arkansas Appeal Tribunal would be entitled to no preclusive effect in Arkansas courts. *See* Ark. Code Ann. § 11-10-314(f)(2) ("No

---

[2] This decision was later affirmed by the Arkansas Appeal Tribunal.

finding of fact or conclusion of law contained in a decision of the Department of Workforce Services, an appeals hearing officer, the Board of Review, or a court obtained under this chapter shall have a preclusive effect in any other action or proceeding except proceedings under this chapter."). Therefore, collateral estoppel does not bar Goal's section 1981 or ACRA race discrimination claims.

A plaintiff may prove intentional race discrimination either by direct evidence or by indirect or circumstantial evidence. *Putman v. Unity Health Sys.*, 348 F.3d 732, 734 (8th Cir. 2003); *Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 n.3 (8th Cir. 2000) ("Claims premised under the Arkansas Civil Rights Act of 1993 are analyzed in the same manner as Title VII claims."). Evidence is direct if it establishes a specific causal link between the discriminatory animus and the challenged decision sufficient to support a finding that the discriminatory animus motivated the adverse employment decision. *Putman*, 348 F.3d at 735. If there is direct evidence of race discrimination, the burden rests with the employer to show that it more likely than not would have made the same decision without the discriminatory motive. *King v. Hardesty*, 517 F.3d 1049, 1057 (8th Cir. 2008). "At the summary judgment stage, the issue is whether the plaintiff has sufficient evidence that unlawful discrimination was *a* motivating factor in the defendant's adverse employment action. If so, the presence of additional legitimate motives will not entitle the defendant[s] to summary judgment." *Id*. at 1058 (quoting *Griffith*, 387 F.3d at 735) (emphasis in the original).

Goal argues that he has direct evidence because Mike Retzer called him "boy" four times within a one-year period and had to be asked three times to stop before ceasing to use that term. Goal also says that other black employees, including Chatman, called him "crazy" and "super Steve," but he conceded in his deposition that when the other black employees mocked him they were not

racially discriminating against him. Use of the word "boy" may be evidence of discriminatory animus. *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456, 126 S. Ct. 1195, 1197, 163 L. Ed. 2d 1053 (2006). The defendants argue that Mike Retzer's calling Goal "boy" on four occasions is not direct evidence because Goal fails to show a specific causal link between those remarks and the decision to discharge him. Although Chatman recommended that Goal be terminated, Mike Retzer, himself, made the decision. The defendants also argue that those comments were too remote in time to be related to the decision to terminate Goal's employment, but they present no evidence to show that those comments were remote in time from the decision to discharge Goal. The Court cannot say as a matter of law that these remarks by Mike Retzer were stray remarks unrelated to the decision to discharge Goal. Although the defendants have presented evidence of a legitimate motive for terminating Goal, whether that evidence defeats Goal's claim is an issue for trial, not for summary judgment. *Hardesty*, 517 F.3d at 1058. Therefore, the defendants' motion for summary judgment on Goal's claim of race discrimination is denied.

## VI.  FLSA

Goal testified that he was ordered to work and did work overtime for which he was not paid. His wife says that Chatman told him he was clocked in when he was not, altered his time, or clocked him out before he was finished. The defendants, however, offer Goal's pay records and time records which indicate that Goal was properly compensated. Further, Goal conceded at his deposition that he clocked himself in and out and received slips showing what time he did so. Goal has not offered any of these slips as evidence that he was at work for longer than reflected in his pay records or time records. Finally, Goal testified that he does not know the dates that he worked overtime without

being paid and that he has no documents, records, facts, or proof that he worked overtime without being properly paid.

The employee "has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87, 66 S. Ct. 1187, 1192, 90 L. Ed. 1515 (1946), *superceded by statute on other grounds*, Portal-to-Portal Act of 1947, Pub. L. No. 49-52, 61 Stat. 87, *as recognized in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir. 1972). A fact finder may rely on a plaintiff's recollections of time worked where the employer "maintained none of the employment records required by the FLSA" so as not to permit the employer from benefitting from its failure to do so. *Mumbower v. Callicott*, 526 F.2d 1183, 1186 (8th Cir. 1975). Here, however, the defendants have offered pay records and time records showing that Goal was properly paid for his work. Moreover, Goal had access to time slips but has not offered any to demonstrate that he worked overtime for which he was not compensated. Finally, Goal concedes that he has no evidence beyond his bald assertions and those of his wife, that he was not paid for overtime. Such bare allegations are insufficient to avoid summary judgment. *See Daniels v. Finish Line, Inc.*, No. 2:07-cv-1501-GEB, 2008 WL 4814008, *3 (E.D. Cal. Oct. 31, 2008) (plaintiff's failure to submit any evidence beyond bare allegations and vague undocumented estimates to support his claim that he was not adequately compensated was insufficient to survive summary judgment); *Millington v. Morrow Cnty. Bd. of Com'rs*, No. 2:06-cv-347, 2007 WL 2908817, *7 (S.D. Ohio Oct. 4, 2007) ("Plaintiff's bare allegation that he worked an average of five hours every week at home is insufficient to meet his burden of proof. Mere conclusory, factually unsupported allegations are insufficient to withstand a motion for summary judgment."); *Simmons v. Wal-Mart Assocs., Inc.*, No. 2:04-cv-51, 2005 WL 1684002, *10 (S.D. Ohio July 19, 2005)

(employee's bald assertions of overtime hours worked, unsupported by any documentation, was insufficient to create a genuine issue of material fact). Summary judgment is appropriate on Goal's FLSA claim.

## VII. DEFENDANT MCDONALD'S RESTAURANT OF HELENA #5425

The defendants have presented affidavits stating that McDonald's Restaurant of Helena #5425 is not a separate legal entity; it is owned by Retzer Resources, Inc. The undisputed facts also show that Goal never worked at the McDonald's Restaurant of Helena #424. Goal's only argument to the contrary is that a Department of Workforce Services form mistakenly identified Goal's employer as "McDonald's Rest of Helena #5424." The portion of the form identifying the employer is typewritten in the same type as other information on the form that obviously was placed there by the Department of Workforce Services. The information on the form provided by the employer's human resources department is handwritten. That some unidentified person at the Department of Workforce Services listed Goal's employer as "McDonald's Rest of Helena #5425" is no more than hearsay and is not evidence that can defeat a properly supported motion for summary judgment. *Johnson v. Baptist Med. Ctr.*, 97 F.3d 1070, 1073 (8th Cir. 1996).

## CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Document #39. The motion for summary judgment on Goal's section 1981 and ACRA claims for race discrimination is denied. The motion for summary judgment on Goal's ADA and ACRA claims for disability discrimination is denied as to his hostile work environment and wrongful discharge claims; the motion is granted as to Goal's claim of failure to accommodate which is dismissed with prejudice. The motion for summary judgment on Goal's

ADA and ACRA retaliation claims and FLSA claim is granted, and those claims are dismissed with prejudice. McDonald's Restaurant of Helena #5425 is dismissed as a defendant because no such legal entity exists.

    IT IS SO ORDERED this 3rd day of November, 2010.

*J. Leon Holmes*
_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE